**UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**GEORGIA JANE WALSH,**
Debtor

Chapter 7
Case No. 08-17767-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**HAROLD B. MURPHY,
CHAPTER 7 TRUSTEE,**
Plaintiff
v.
**GEORGE W. WALSH,**
Defendant

Adv. P. No. 08-1372

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

Two matters are before the Court: 1) the Plaintiff's Motion for Summary Judgment; and 2) Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Request for Leave to Late File Defendant's Responses to Admissions. The Court heard the matters on June 2, 2010 and took them under advisement. The issue presented is whether the
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

Trustee sustained his burden of establishing the absence of any genuine issues of material fact with respect to allegedly fraudulent transfers he seeks to avoid arising out of a reverse mortgage transaction. For the reasons set forth below, the Court shall grant the Plaintiff's Motion for Summary Judgment and deny the Defendant's Request for Leave to Late File Defendant's Responses to Admissions.

**II. THE TRUSTEE'S COMPLAINT**

On December 5, 2008, Harold B. Murphy, the Chapter 7 Trustee of the bankruptcy estate of Georgia Jane Walsh (the "Plaintiff"), filed a complaint (the "Complaint") against George W. Walsh (the "Defendant"), seeking to avoid and recover certain transfers pursuant to 11 U.S.C. §§ 544(b), 550 and Mass. Gen. Laws ch. 109A, §§ 5(a)(2)[1] and 6(a).[2]

---

[1] Section 5(a) provides in relevant part the following:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: . . .
>
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > > (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
>
> (b) In determining actual intent under paragraph (1) of subsection (a),

consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Mass. Gen. Laws ch. 109A, § 5. The Court observes that the Trustee has alleged that the Debtor, through the Defendant's use of the durable power of attorney, transferred substantially all her assets (i.e, the equity in her home) to an insider, her son; she continued to reside in the property; and she was insolvent or became insolvent shortly after the transfers were made.

[2] Section 6 provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a

In Counts I through III of his Complaint, the Plaintiff alleged that he may avoid, pursuant to 11 U.S.C. § 544(b),[3] certain transfers of the Debtor's interest in property because those transfers are voidable under applicable state law by a creditor holding an unsecured claim that is allowed under 11 U.S.C. § 502. The Plaintiff further alleged that one or more unsecured creditors exist who hold claims that arose before or after the date of each of the transfers he seeks to avoid. In addition, he averred that he may recover the transfers or the value of the avoided transfers from the Defendant, the initial transferee of the transfers, pursuant to 11 U.S.C. §§ 550, 551. Through Count IV of his Complaint, the Plaintiff also sought, pursuant to 11 U.S.C. § 502(d), to disallow any claim that the Defendant might assert against the Debtor and/or her estate unless the Defendant paid to the Plaintiff the full amount of any judgment obtained by him against the Defendant as requested in the Complaint. Because the Defendant did not file a proof of claim, Count IV is moot.

---

> creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Mass. Gen. Laws ch. 109A, § 6.

[3] Section 544(b) provides:

> Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

On or about January 5, 2010, the Defendant filed his Answer to the Complaint. Within a few days, the Court issued a pretrial order establishing a discovery deadline of April 8, 2009.

**III. FACTS**

A. The Debtor's Bankruptcy Case

On October 14, 2008, Georgia Jane Walsh ("the Debtor") filed a voluntary Chapter 7 petition. On or about October 15, 2008, Harold B. Murphy was appointed the Chapter 7 trustee of her bankruptcy estate.

On October 30, 2008, the Debtor, who was represented by Peter R. Kaplan, Esq., filed her Schedules and Statement of Financial Affairs. On Schedule A-Real Property, the Debtor represented that she was the sole owner of her residence located at 18 Cloverdale Avenue, Salem, Massachusetts (the "Salem Property"). The Debtor also represented in Schedule A that the Salem Property had a value, as of the petition date, of $286,407. The Debtor did not claim a homestead exemption under either federal or state law on Schedule C-Property Claimed as Exempt in the Salem Property. On Schedule D-Creditors Holding Secured Claims, the Debtor listed Financial Freedom Senior Funding Corp. as the holder of a reverse mortgage on the Salem Property with a claim in the amount of $302,447.42.

On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed three creditors holding the following claims:

| Creditor's Name | Date Claim Was Incurred and Consideration for Claim | Amount of Claim |
|---|---|---|
| American Express/Credit Card Acct. No. -4543 | Opened 4/01/04 Last Active 3/03/06 | $5,102.00 |
| Bac / Fleet Bankcard/Credit Card Acct. No. -6274 | Opened 11/01/03 Last Active 6/12/08 | $7,042.00 |
| Chase CC/Credit Card Acct. No. -4915 | 2007 | $3,631.46 |
| | Total: | $15,775.46 |

On Schedule I-Current Income of Individual Debtor(s), the Debtor indicated that she was retired and received a monthly Social Security check in the sum of $743.60. On Schedule J-Current Expenditures of Individual Debtor(s), the Debtor listed monthly expenses totaling $818.33.

The Court takes judicial notice of the Debtor's Statement of Financial Affairs in which the Debtor reported income from Social Security in the amount of $10,116 for calendar years 2006 and 2007. She did not report any transfers or payments to creditors, other than a payment of $1,500 to her attorney.

The Court established a deadline of March 9, 2009 for creditors to file proofs of claim against the Debtor's estate. The three creditors listed in the Debtor's Schedule F timely filed proofs of claim for outstanding and unpaid credit card charges for which the Debtor was liable. Chase Bank USA, NA ("Chase") filed proof of claim no. 1 asserting a nonpriority unsecured claim in the exact amount as listed on the Debtor's Schedule F. The Plaintiff investigated the claim and determined that the Chase Claim is allowable under 11 U.S.C. § 502 and that the credit card charges that form the underlying basis for the Chase Claim

arose either before or after the transfers related to the home equity conversion loan, discussed below, were made.

Bank of America filed proof of claim no. 2 asserting a non-priority unsecured claim in the amount of $7,042.78, an amount substantially similar to the amount listed on the Debtor's Schedule F (the "BofA Claim"). After the Plaintiff's investigation of the BofA Claim, the Plaintiff determined that the BofA Claim is allowable under 11 U.S.C. § 502 and that based upon the BofA credit card statements for the Debtor's account, as well as the Defendant's bank statement issued by Beverly Cooperative Bank, the Debtor had an outstanding credit card balance on her account with BofA in October 2005. On November 4, 2005 the Defendant paid the outstanding balance on the BofA credit card, in the amount of $4,491.16, after receiving the initial transfer of $40,000, discussed below. The credit card charges that form the underlying basis for the BofA Claim arose after the transfers associated with the home equity conversion loan were made.

American Express ("Amex") filed proof of claim no. 3 asserting a nonpriority unsecured claim in the amount of $5,463.39 relating to credit card charges incurred on account number ending in -1001 (the "Amex Claim"). After the Plaintiff's investigation of the Amex Claim, the Plaintiff determined that the Amex Claim is allowable under 11 U.S.C. § 502 and that the credit card charges that form the underlying basis for the Amex Claim arose either before or after the transfers were made.

B. The Home Equity Conversion Loan

Approximately three years before she filed her bankruptcy petition, the Debtor, in

September of 2005, appointed George A. Walsh, her son and the Defendant, her attorney in fact under a durable power of attorney. On or about October 24, 2005, the Defendant, exercising his authority under the durable power of attorney and on behalf of the Debtor, entered into a Home Equity Conversion Loan Agreement (the "Loan Agreement") with Financial Freedom Senior Funding Corporation, a Subsidiary of Indymac Bank, F.S.B. (the "Lender"). The Lender provided an initial home equity line of credit up to a maximum principal amount of $256,886.80, which was based on a "Property Appraised Value" of $335,000.

On the same date, in connection with the Loan Agreement, the Defendant, exercising his authority under the durable power of attorney and on behalf of the Debtor, executed in the Debtor's name an Adjustable Rate Home Equity Conversion Mortgage (the "First Mortgage"). The mortgage was recorded on October 31, 2005 in the Essex County Registry of Deeds (South District) at Book 25016, Page 201. The Debtor was not required to make monthly payments under the Note and Mortgage, and she was not personally liable for any deficiency. The Mortgage secured, among other things, "the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of Four Hundred Sixty Nine Thousand and Three Hundred Forty Two and 50/100 (U.S. $469,342.50)," as well as any advances made in connection with the Loan Agreement and the Note. The Note was due and payable on August 30, 2069. The Note, however, contained grounds for acceleration including the following:

> (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or
> (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple . . . .

In addition, the Lender was entitled to payment in full of all amounts due under the Note if the Salem Property ceased to be the principal residence of the Debtor for reasons other than death or if the Debtor ceased to occupy the Property for a period longer than 12 consecutive months because of physical or mental illness.

The Defendant, exercising his authority under the durable power of attorney and on behalf of the Debtor, also executed in the Debtor's name an Adjustable Rate Home Equity Conversion Second Mortgage (the "Second Mortgage," and together with the First Mortgage, the "Mortgages"), dated October 24, 2005 and recorded on October 31, 2005 in the Essex County Registry of Deeds (South District) at Book 25016, Page 210, pursuant to which a second mortgage was granted on the Salem Property to the Secretary of Housing and Urban Development to secure, among other things, the repayment of any advances made in connection with the Loan Agreement and the Note.

C. The Transfers

On October 28, 2005, the Defendant received an initial principal disbursement from the Line of Credit in the amount of $40,000. According to the Trustee, he used approximately $17,900 of that amount to satisfy certain credit card obligations owed by the Debtor.

On November 21, 2005, the Defendant received a second principal disbursement of

$50,000 and approximately three months later, on February 23, 2006, he received a third principal transfer of $150,000 (collectively, the “transfers”). The three transfers totaled $240,000.

D. The Adversary Proceeding: Procedural Background

Following the commencement of the adversary proceeding and the issuance of the Court’s pretrial order, the parties negotiated a discovery plan and, on March 9, 2009, filed a Motion to Approve Discovery Plan with the Court. By order dated March 10, 2009, the Court allowed the motion and approved the discovery plan (the “Discovery Plan”), pursuant to which the parties proposed modifications of the Court’s January 8, 2009 pretrial order. Pursuant to paragraph 1 of the Discovery Plan, the parties were required to provide initial disclosures under Fed. R. Bankr. P. 7026(a)(1), (2) on or before March 31, 2009. Pursuant to paragraph 3 of the Discovery Plan, all fact discovery, including answers to interrogatories and requests for production of documents, was required to be served so that all responses were due on or before September 1, 2009.

On March 31, 2009, the Plaintiff served the Defendant with his initial disclosures pursuant to Fed. R. Bankr. P. 7026(a)(1), (2), and filed a certificate of service respecting the same on April 1, 2009. The Defendant has not yet served his initial disclosures.

On July 29, 2009, the Plaintiff served the Plaintiff's First Set of (i) Requests for Admissions; (ii) Interrogatories; and (iii) Requests for Production of Documents on the Defendant (collectively, the “Discovery Requests”) by overnight FedEx delivery. Pursuant to the FedEx electronic shipment delivery confirmation notice, the Defendant’s counsel

received the Discovery Requests on July 30, 2009 at 12:08 p.m. The Defendant's responses to the Discovery Requests, including his answers to the Plaintiff's Requests for Admissions, were due on or before August 28, 2009 pursuant to Fed. Civ. P. 36, made applicable to this proceeding by Fed. R. Bankr. P. 7036.

In the Discovery Requests, the Requests for Admissions propounded pursuant to Fed. R. Civ. P. 36 on the Defendant included the following:

> Plaintiff requests that [Defendant] admit, within thirty (30) days from the date of service hereof, for the purposes of this action only, and subject to all pertinent objections to admissibility which may be imposed at trial, the truth of the following statements:
>
> > 1. The Debtor was insolvent or became insolvent at the time each of the Transfers was made.
> > 2. Each of the Transfers was made while the Debtor intended to incur, or believed or reasonably should have believed that she would incur, debts that would be beyond her ability to pay as they became due.
> > 3. Each of the Transfers was made while the Debtor was engaged or was about to be engaged in a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the transaction.
> > 4. [Defendant] was the initial transferee of each of the Transfers or the person for whose benefit each of the Transfers was made.

The Defendant failed to respond to the Discovery Requests, including the Plaintiff's Requests for Admissions, on or before the response deadline pursuant to Fed. R. Civ. 36, Fed. Bankr. P. 7036, and the instructions contained in the Discovery Requests.

By orders dated August 17, 2009, October 27, 2009, December 14, 2009, and January 14, 2010, this Court authorized amendments of the Discovery Plan to extend deadlines, including the fact discovery deadline to and including January 21, 2010. Neither party

sought an extension of the deadline for responding to the outstanding Requests for Admissions. According to the Trustee, the Defendant has neither served his initial disclosures nor any discovery requests or deposition notices.

The Plaintiff filed his Motion for Summary Judgment on March 10, 2010. On March 15, 2010, the Court scheduled the hearing on the Motion for Summary Judgment and set May 4, 2010 as the deadline for the filing of an objection. The Court subsequently rescheduled the hearing to June 2, 2010. Thus, before the May 4, 2010 deadline, the Defendant had almost two months within which to obtain an extension of time to comply with outstanding discovery requests, comply with those requests, and produce substantial evidence pertinent to the Debtor's solvency in the form of appraisals or otherwise to rebut the affidavit and other evidence supporting the Trustee's Motion for Summary Judgment.

## III. THE DEFENDANT'S RESPONSE TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR LEAVE TO LATE FILE DEFENDANT'S RESPONSES TO ADMISSIONS

The Defendant filed his Responses to the Plaintiff's Request for Admissions on May 4, 2010, at the same time he filed his Opposition to the Plaintiff's Motion for Summary Judgment and a Request for Leave to Late File Defendant's Responses to Admissions. In his Responses to the Plaintiff's four Requests for Admissions, he 1) denied that the Debtor was insolvent or became insolvent; 2) denied that each of the transfers was made while the Debtor intended to incur, or believed or reasonably should have believed that she would incur debts that would be beyond her ability to pay as they became due, and 3) denied that the transfers were made while the Debtor was engaged or was about to be engaged in a

transaction for which the remaining assets of the Debtor were unreasonably small in relation to the transaction. In response to the fourth Request for Admissions, the Defendant admitted that he was the initial transferee of each of the transfers or the person for whose benefit each transfer was made "to the extent that Transfers were made pursuant to Mr. Walsh's power of attorney."

The Defendant stated that the reason he failed to comply with the provisions of Rule 7036 was oversight by his attorney, adding that he "intends to present testimony at any evidentiary hearing in this matter to support such facts and/or to submit affidavits to that effect. . . ." The Defendant also stated: "responses to the remaining discovery requests will be submitted shortly."

**IV. DISCUSSION**

A. Applicable Law

1. Summary Judgment

The summary judgment standard is well-known and needs little explication. Pursuant to Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056, "the judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The United States Court of Appeals for the First Circuit has stated the following:

> It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P.

> 56(c). As to issues on which the movant, at trial, would be obliged to carry the burden of proof, he initially must proffer materials of evidentiary or quasi-evidentiary quality-say, affidavits or depositions-that support his position. When the summary judgment record is complete, all reasonable inferences from the facts must be drawn in the manner most favorable to the nonmovant. This means, of course, that summary judgment is inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record. . . .

Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir.1994) (citations omitted, footnote omitted). Rule 56(e) further provides:

> (e) Affidavits; Further Testimony.
>
> > (1) In General. A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and *show that the affiant is competent to testify on the matters stated*. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.
> >
> > (2) Opposing Party's Obligation to Respond. When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Bankr. P. 56(e).

2. Rule 36(a) and (b)

Fed. R. Civ. P. 36, made applicable to this proceeding by Fed. R. Bankr. P. 7036, provides in relevant part: "A matter is admitted unless, within 30 days after being served,

the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).

In In re Skyport Global Commc'ns, Inc., 408 B.R. 687 (Bankr. S.D. Tex. 2009), the court explained the rationale of the rule and exceptions to it. It stated:

> Pursuant to Rule 36(a), litigants may request admissions on a broad range of matters, "including ultimate facts, as well as application of law to facts." Carney v. IRS (In re Carney), 258 F.3d 415, 419 (5th Cir. 2001). "Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." Id. (citing 8A Wright Miller & Marcus, Federal Practice and Procedure § 2254 (2d ed.1994)); Sampayo Climaco y Asociados Despacho Juridico Internacional (In re Cantu), No. 08-07041, 2009 WL 1257151, at * 1 (Bankr. S.D. Tex. May 4, 2009) (same). The party responding to requests for admissions has an affirmative duty to act within thirty (30) days from being served. Fed.R.Civ.P. 36(a)(3); In re Cantu, 2009 WL 1257151, at *1. Failure to respond to requests for admissions within the time permitted results in the responding parties deemed admissions of the matters contained within. Fed. R. Civ. P. 36(a)(3); In re Carney, 258 F.3d at 419; Finlay v. Wolpoff & Abramson, No. H-08-0786, 2009 WL 936882, at *2 (S.D. Tex. April 3, 2009); In re Cantu, 2009 WL 1257151, at *1; Powerhouse Prods., Inc. v. Widgery, No. 4:07-cv-071, 2008 WL 4331428, at *1 (E.D. Tex. Sept.17, 2008).
>
> The Fifth Circuit has stressed that "a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." In re Carney, 258 F.3d at 419; Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C., 930 F.2d 1117, 1120 (5th Cir.1991). In reviewing such a motion, courts must determine: (1) whether withdrawal "would promote the presentation of the merits of the action;" and (2) whether withdrawal "would prejudice the requesting party in maintaining or defending the action on the merits." Fed.R.Civ.P. 36(b); In re Carney, 258 F.3d at 419. "Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission." In re Carney, 258 F.3d at 419; *see* Le v. Cheesecake Factory Rest., Inc., No. 06-20006, 2007 WL 715260, at *2 (5th Cir. Mar.6, 2007); Powerhouse Prods., 2008 WL 4331428, at *1; *see also* Donovan v. Carls Drug Co., 703 F.2d 650, 652 (2d Cir.1983) ("Because the

> language of [Rule 36(b) ] is permissive, the court is not required to make an exception to Rule 36 even if both the merits and the prejudice issues cut in favor of the party seeking exception to the rule.").

408 B.R. at 697. *See also* Zimmerman v. Cambridge Credit Counseling Corp., 529 F.Supp.2d 254 (D. Mass. 2008).

B. Analysis

The only opposition to the Plaintiff's Motion for Summary Judgment produced by the Defendant is set forth in his Responses to Plaintiff's Request for Admissions. The Defendant states that "[i]f the matters contained in Plaintiff's Requests for Admissions are not deemed admitted, Plaintiff cannot bring the present Motion." He adds that Plaintiff's Motion for Summary Judgment is, "in essence a 'motion relating to a discovery dispute,' within the meaning of MLBR Rule 7037-1, requiring a prior conference to resolve the dispute and a certificate evidencing the same." He also maintains that had such a conference been initiated, discovery would have been submitted and there would have been no need for the Motion for Summary Judgment.

The Court rejects the Defendant's position, which improperly attempts to shift the burden to the Plaintiff for the Defendant's failure to timely respond to the Requests for Admissions. The Defendant was obligated to respond to the Requests for Admissions and failed to do so in a timely manner. To avoid the ramifications of that failure, it was incumbent upon him to both satisfy the conditions of Rule 36(b) and file an objection to the Plaintiff's Motion for Summary Judgment that demonstrated the existence of a material fact in dispute. He failed to do so. *See* Fed. R. Civ. P. 56(e)(2).

In view of the applicable rule of civil procedure and case law in this district and elsewhere, the Court finds that the Debtor's insolvency is deemed admitted. The Defendant's reliance on Fed. R. Civ. P. 36(b) is unavailing. The Defendant's bald denial of insolvency does satisfy the requirements of Rule 36(b), because it fails to subserve the presentation of the merits. *See* Zimmerman, 529 F.Supp.2d at 264-65. Indeed, the court in Zimmerman observed:

> At least some courts have questioned whether the Rule 36(b) test should even apply where a party has failed outright to answer requests for admission, given that the usual standard governing motions to permit an action under the Federal Rules of Civil Procedure after the relevant time period has expired is the more rigorous Rule 6(b)(2) "excusable neglect" standard. *See* Sea-Land Serv. v. Citihope Int'l, 176 F.R.D. 118, 122 n. 10 (S.D.N.Y.1997) (suggesting that the Rule 36(b) test should apply "only in circumstances in which a party has filed a timely response to a Rule 36 request but later seeks to change or withdraw its response"); Nat'l Coalition v. Wilkey, No. 00-1686, 2007 WL 951559, *2, 2007 U.S. Dist. LEXIS 21719, at *8 (N.D.N.Y. Mar. 27, 2007).

258 F.Supp.2d at 266 n.10.[4] The Defendant's statements that he will submit evidence at a later date only underscores the weakness of his present position. In view of the pendency of the Motion for Summary Judgment, the Defendant needed to do more than rely on Rule

---

[4] The Defendant's denial of insolvency in his Answer to the Complaint does not change the result. *See* Meyers v. Town of Putney (In re Corporation of Windham College), 34 B.R. 408, 411 (Bankr. D. Vt. 1983) ("An admission under the rule is comparable to an admission in pleadings; but where a denial contained in the pleadings is inconsistent with an admission under the rule, the admission under the rule supersedes the denial contained in the pleadings. Fed.R.Civ.P. 36 advisory committee note; *see generally*, Moore's Manual, § 15.12. Summary judgment may be granted where material facts are established as uncontroverted by reason of an admission under the rule. Id. at page 15-110 n. 35 (1982) and cases cited therein; *see*, In Re Hess, 21 B.R. 465, 467 (Bkrtcy. W.D. Va.1982).").

36(b). It was incumbent upon him to produce evidence in the form of an affidavit or otherwise pertinent to both the Debtor's solvency and the use of the funds obtained from the reverse mortgage on the Salem Property.

The Plaintiff, in his Opposition to the Defendant's Request for Leave to Late File Defendant's Responses to Admissions, stated that the relief sought "would essentially render the provisions of Rule 7036 meaningless and would unfairly prejudice the Plaintiff." The Court agrees. The Plaintiff's Complaint has been pending for over a year and a half and the Requests for Admissions were not lengthy, complex or burdensome. The Plaintiff was justified in filing a Motion for Summary Judgment and is justified in relying upon Fed. R. Civ. P. 36, made applicable to this proceeding by Fed. R. Bankr. P. 7036. He has established that he will be prejudice if this Court were to permit the Defendant to respond to the Requests for Admissions at this time. Nevertheless, even if this Court were to grant the Defendant's Request for Leave to Late File Defendant's Responses to Admissions, the result would not change. The Defendant failed to submit any evidence or persuasive argument pertinent to the merits of his defense to Plaintiff's Complaint, and thus failed to comply with the provisions of Fed. R. Civ. P. 56(e)(2), as well as Rule 36(b).

Although he denied the Debtor's insolvency, the Defendant did not set out a single fact that would show that he is competent to testify about her solvency for purposes of opposing the Motion for Summary Judgment. While it is undisputed that the Defendant is the Debtor's son and holds a power of attorney, the Court was presented with no evidence of his personal knowledge or qualifications to testify about the Debtor's solvency

or the use that was made of the $240,000, less the $17,900 used to pay the Debtor's credit card bills, that was obtained from the reverse mortgage. In view of the Debtor's Schedules, the Court has been presented with compelling evidence that the Debtor was insolvent. She had no unencumbered or exempt assets at the commencement of her Chapter 7 cases, and she had insufficient income to meet her ordinary living expenses. In other words, she had no ability to make payments to her unsecured creditors, and, if her assets were liquidated, there would be no nonexempt assets available to satisfy the claims of unsecured creditors. *See* 11 U.S.C. § 101(32).[5] Under those circumstances, the Defendant was required to do more than rely on the Response to the Requests for Admissions.

Having determined that the facts set forth in Plaintiff's Requests for Admissions are deemed admitted, the Court finds that there are no genuine issues of material fact and that the Plaintiff is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056. Again, even were the Court to

---

[5] The term "insolvent" means--

> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
>
> > (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
> > (ii) property that may be exempted from property of the estate under section 522 of this title. . . .

11 U.S.C. § 101(32)(A).

accept the Defendant's late filed Responses to the Requests for Admissions, however, it would not be sufficient to prevent the entry of summary judgment in favor of the Plaintiff. Under Rule 56(e), a party opposing summary judgment may not rest upon mere conclusory allegations or denials but must set forth supporting arguments or facts in opposition to the motion. The Defendant's Responses - - bald denials - - do not satisfy the test under Rule 56(e), particularly when coupled with the Defendant's failure to comply with MLBR 7056-1, which incorporates District Court Local Rule 56.1. That rule required the Defendant "to include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation."

**VI. CONCLUSION**

In accordance with the foregoing, the Court shall grant the Plaintiff's Motion for Summary Judgment and enter judgment in favor of the Plaintiff and against the Defendant in the sum of $222,100.00.

By the Court,

Joan N. Feeney

Joan N. Feeney
United States Bankruptcy Judge

Dated: June 24, 2010
cc: Peter R. Kaplan, Esq., Natalie B. Sawyer, Esq.